490 P.2d 680

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Terry Lee BROWDER, Defendant-Appellant.**

No. 696.

Court of Appeals of New Mexico.

Oct. 29, 1971.

Harvey C. Markley, Lovington, for defendant-appellant.

David L. Norvell, Atty. Gen., James B. Mulcock, Jr., Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

WOOD, Chief Judge.

Convicted of receiving stolen property in excess of $2500.00, defendant appeals. Section 40A–16–11, N.M.S.A. 1953 (Repl. Vol. 6, Supp.1971). The appeal challenges the sufficiency of the evidence. The State asserts defendant may not have the evidence reviewed as to its sufficiency because defendant's motion for a directed verdict at the close of the case-in-chief was denied and not renewed at the close of all the evidence. See State v. Phipps, 47 N.M. 316, 142 P.2d 550 (1943); State v. Vargas, 42 N.M. 1, 74 P.2d 62 (1937). We do not reach this procedural problem; our review is on the basis of fundamental error.

State v. Torres, 78 N.M. 597, 435 P.2d 216 (Ct.App.1967) states:

"The doctrine of fundamental error is resorted to in criminal cases only if the innocence of the defendant appears in-

disputable, or if the question of his guilt is so doubtful that it would shock the conscience to permit his conviction to stand. State v. Sanders, 54 N.M. 369, 225 P.2d 150 (1950). If there is a total absence of evidence to support a conviction, as well as evidence of an exculpatory nature, then an appellate court has the duty to see that substantial justice is done and to set aside the conviction. State v. Salazar, 78 N.M. 329, 431 P.2d 62 (1967). * * *"

Three "oil field" drilling bits disappeared from drilling locations in eastern Oklahoma. These locations were in the general vicinity of Fort Smith, Arkansas. The bits were recovered from a house in Hobbs, New Mexico. Defendant was in the Fort Smith area at the time the bits disappeared and was staying in the house in Hobbs, as a visitor, at the time the bits vere recovered.

Two other men are connected with the house where the bits were located: Meissner, who was also staying in the house and was present when the bits were found; and Sewell, who had rented the house. The detective who discovered the bits testified that Sewell had taken some of defendant's property and disappeared. According to defendant, this property was defendant's car and clothes.

Other evidence is: (1) Defendant had rented the house immediately prior to the time Sewell became the renter; (2) Meissner and defendant returned from Arkansas together in defendant's car; (3) the detective, acting on the basis of information received from an unidentified person, went to a bar looking for a person (unidentified) reported to be trying to sell bits and then went to the house where the bits were found; and (4) defendant, in response to the detective's question, stated he did not have a bill of sale for the bits.

Section 40A–16–11, supra, defines the crime of receiving stolen property as "* * * buying, procuring, receiving or concealing anything of value, knowing or having reason to believe the same to have been stolen or acquired by fraud or embezzlement." See State v. Carlton, 82 N.M. 537, 484 P.2d 757 (Ct.App.1971). There is neither direct nor circumstantial evidence that defendant bought, procured, received or concealed the bits. The jury was instructed on aiding and abetting but there is neither evidence nor inference that defendant participated in any way in any buying, procuring, receiving or concealing of the bits. See State v. Salazar, 78 N.M. 329, 431 P.2d 62 (1967). Defendant was present in the house where the bits were found, but presence alone is insufficient. State v. Grove, 82 N.M. 679, 486 P.2d 615 (Ct.App.1971); State v. Harrison, 81 N.M. 324, 466 P.2d 890 (Ct.App.1970).

Here, there is a total absence of evidence to support the conviction. In addition, there is evidence of an exculpatory nature. Defendant testified he had been in the Fort Smith area visiting relatives. He also testified that he stayed at the house in Hobbs where the bits were found because he was having marital difficulties. Other exculpatory evidence is that the house where the bits were found had been rented by Sewell, and that Sewell had disappeared.

 We recognize that the doctrine of fundamental error is to be applied sparingly and is not to be used to excuse failure to make proper objection in the trial court. State v. Aull, 78 N.M. 607, 435 P.2d 437 (1967), cert. denied 391 U.S. 927, 88 S.Ct. 1829, 20 L.Ed.2d 668 (1968); State v. Sanders, 54 N.M. 369, 225 P.2d 150 (1950). We also recognize that fundamental error must go to the foundation of the case. State v. Garcia, 46 N.M. 302, 128 P.2d 459 (1942). We apply the doctrine within these limitations. We do not hold that the innocence of defendant is indisputable. We do hold that the absence of evidence against defendant, together with the exculpatory evidence, makes his guilt so doubtful "* * * that it would shock the conscience to permit his conviction to stand. * * *" State v. Torres, supra.

The judgment and sentence is reversed. The cause is remanded with directions to discharge the defendant.

It is so ordered.

SUTIN, J., concurs.

COWAN, Judge (dissenting).

The majority failed to "view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences in favor of the verdict of conviction" as they are required to do. State v. Hinojos, 78 N.M. 32, 427 P.2d 683 (Ct.App.1967).

Defendant was an oil field worker. Separated from his wife, he had been renting a house at 118 West Byers in Hobbs, New Mexico, from March 1970 until "just before Christmas". The landlord had gone to the house a day or two before Christmas, found defendant gone and a man named Jim Sewell living there. Told by Sewell that the defendant had moved out, he rented the house to Sewell.

On December 15 or 16 defendant had left Hobbs for Ft. Smith, Arkansas, just across the eastern border of Oklahoma, to visit his family. Ft. Smith is near an oil producing area in eastern Oklahoma.

The three drilling bits involved in the case, worth approximately $1100 each, had been delivered from Ft. Smith to different drilling locations nearby, one on December 16, one on December 21, and one on December 28, 1970. The practice is for the supply houses to deliver bits to drilling rigs where they may or may not be used. If one is needed, it will be used and the drilling company charged for it. If not used, it will be picked up and returned to the warehouse. Each bit has its own individual IBM card so that its location can be determined at any time. The three bits were not used, but disappeared from the locations.

On the morning of December 31, 1970, the defendant, accompanied by a man named Meissner, left Ft. Smith to return to Hobbs. They arrived in Hobbs about 10:00 P.M. and celebrated New Year's Eve until 1:00 A.M., January 1, 1971. Somewhat intoxicated, they went to the house at 118 West Byers and went to sleep in the front room.

That same day, a Hobbs police officer received a telephone tip that "there were two men selling some stolen drill bits" at a bar and that they were then at 118 West Byers, in Hobbs. He drove there, was granted admission and permission by Meissner to look through the house. On the kitchen counter were the three drill bits from the Ft. Smith area, some 650 miles away, where they and the defendant had been only a short time before. This is evidence sufficient to support the conviction.

This jurisdiction is committed to the doctrine that fundamental error is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand. State v. Rodriguez, 81 N.M. 503, 469 P.2d 148 (1970).

The record before us does not suggest the indisputable innocence of the appellant, nor that the question of his guilt is so doubtful that it would shock the conscience to permit his conviction to stand. Feeling that the majority opinion extends the doctrine of fundamental error beyond its proper limits, I dissent.